RECEIVED
JUN 1 8 2004
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

RECEIVED
JUN 1 8 2004
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
JUN 2 2 2004
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| Horace Deaville, on Behalf of Himself and the Class Described Herein, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Capital One Bank a/k/a Capital One Services, Inc. a/k/a Capital One Financial Corporation a/k/a Capital One, F.S.B., )<br><br>Defendant. ) | **Civil Action No. 03CV-1429S**<br><br>**Judge Hicks**<br><br>**Magistrate Judge Payne**<br><br>**CLASS ACTION**<br><br>**CAPITAL ONE BANK, CAPITAL ONE SERVICES, INC., AND CAPITAL ONE, F.S.B.'S REPLY IN SUPPORT OF MOTION TO STRIKE ALLEGATIONS FROM AND TO DISMISS THE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    Plaintiff Does Not State Any Federal Claim................................................ 2

    A.   Plaintiff Does Not Sufficiently Allege an FDCPA
        "Debt Collector." ................................................................................. 2

        1.   Plaintiff Ignores the Fact that His Amended
            Complaint Now Claims that Capital One Bank Had
            Nothing to Do with the Second Credit Card
            Solicitation. ............................................................................ 2

        2.   Even if the Court Were to Consider Plaintiff's New,
            Contradictory Allegation, the Amended Complaint
            Fails to Allege that Capital One, F.S.B. or Capital
            One Services, Inc. Are "Debt Collectors." ............................... 3

    B.   The FDCPA Claim and the TILA Claim Are Time-
        Barred.................................................................................................. 4

    C.   Plaintiff Admits that He Does Not State an FCRA
        Claim.................................................................................................. 5

II.   Plaintiff Fails to State Any Claim under Virginia or
    Lousiana Law............................................................................................... 6

    A.   Plaintiff Cannot Maintain Any Claim Under
        Virginia Law. ...................................................................................... 6

        1.   All of Capital One's Customer Agreements Contain
            the Virginia Choice-of-Law Provision, Which the
            Louisiana Consumer Credit Law Explicitly Permits. .............. 6

        2.   The Louisiana Consumer Credit Card Law's Specific
            Allowance of the Virginia Choice of Law Provision
            Trumps the LUTPA's General Provision. ............................... 7

    B.   Plaintiff Cannot Maintain Any Claim Under the
        Louisiana Unfair Trade Practices Act............................................... 8

        1.   By Its Own Terms the LUTPA Does Not Apply
            Where, as Here, Defendants' Alleged Actions Are
            Subject to Federal Banking Regulation. ................................. 8

2.    Any LUTPA Claim Would Also Be Barred by the LUTPA's One-Year Statute of Limitations, Which Is Not Subject to Tolling.............................................................11

C.    Any and All State Law Claims Based on Furnishing of Information to Credit Bureaus Fail for the Further Reason that the FCRA Preempts Such Claims. .............................................11

1.    Section 1681t(b)(1)(F)'s Plain Language Preempts All State Claims Relating to Furnishers of Information. .......................................................................11

2.    Plaintiff Provides No Support for His Argument that Section 1681t(b)(1)(F) Is Meant to Preempt Only Claims for Violation of State "Mini-Credit Reporting Acts." ..........................................................................14

a.    Legislative History Supports Capital One, Not Plaintiff. ..............................................................14

b.    *Whitesides* and Similar Cases Do Not Address Section 1681t(b)(1)(F). .......................................15

D.    Any and All State Law Claims Against Capital One, F.S.B. Fail for the Further Reason that the HOLA and OTS Regulations Preempt Them. ..........................................16

1.    The HOLA and OTS Regulations Preempt State Law Claims Based on Plaintiff's Allegation that Capital One, F.S.B. Sent a Misleading Credit Card Solicitation. ..................................................................16

2.    The HOLA and OTS Regulations Preempt State Law Claims Based on Plaintiff's Allegation that Capital One, F.S.B. Furnished Incorrect Information to Credit Bureaus. ......................................................................17

CONCLUSION.............................................................................20

# TABLE OF AUTHORITIES

## CASES

*American Bankers Ass'n v. Lockyer,*
  239 F. Supp. 2d 1000 (E.D. Cal. 2002) ...................................................................17

*Aubert v. American Gen. Fin., Inc.,*
  137 F.3d 976 (7th Cir. 1998) ...................................................................................3

*Bank of America v. City & County of San Francisco,*
  309 F.3d 551 (9th Cir. 2002), *cert. denied,* 538 U.S. 1069 (2003)...........................17

*Blair v. Nat'l Constr. Co.,*
  611 F.2d 80 (5th Cir. 1980) ..............................................................................18 n. 4

*Blanchard & Co. v. Barrick Gold Corp.,*
  No. Civ. A 02-3721, 2003 WL 22071173 (E.D. La. Sept. 3, 2003)..........................10

*Carney v. Experian Info. Solutions, Inc.,*
  57 F. Supp. 2d 496 (W.D. Tenn. 1999) ...................................................................12

*Dawkins v. Sears Roebuck & Co.,*
  109 F.3d 241 (5th Cir. 1997) .....................................................................................4

*Fenning v. GlenFed Inc.,*
  47 Cal. Rptr. 2d 715 (Cal. Ct. App. 1995).........................................................18 n. 4

*Fidelity Nat'l Info. Solutions, Inc. v. Sinclair,*
  No. Civ. A. 02-6928, 2004 WL 764834 (E.D. Pa. Mar. 31. 2004)...........................19

*First Fin. Bank, FSB v. Butler,*
  492 So. 2d 503 (La. Ct. App. 1986).........................................................................8

*Flanagan v. Germania, F.A.,*
  872 F.2d 231 (8th Cir. 1989) ............................................................................18 n. 4

*Godchaux v. Conveying Techniques, Inc.,*
  846 F.2d 306 (5th Cir. 1988) ....................................................................................7

*Hasvold v. First USA Bank, N.A.,*
  194 F. Supp. 2d 1228 (D. Wyo. 2002)...............................................................12, 13

*Hussey-Head v. World Sav. & Loan Ass'n,*
  4 Cal. Rptr. 2d 171 (Cal. Ct. App. 2003)................................................................17

*Jaramillo v. Experian Info. Solutions, Inc.,*
  155 F. Supp. 2d 356 (E.D. Pa. 2001) ......................................................................13

*Jaramillo v. Experian Info. Solutions, Inc.*,
   No. 00-CV-5876, 2001 U.S. Dist. LEXIS 10221 (E.D. Pa. June 20, 2001) ....................... 13 n. 3

*Kodrick v. Ferguson.*,
   54 F. Supp. 2d 788 (N.D. Ill. 1999) ...................................................................................... 14

*Kronstedt v. Equifax, CSC*,
   No. 01-C-0052-C, 2001 U.S. Dist. LEXIS 25021 (W.D. Wis. Dec. 14, 2001) ........................ 16

*Modern Farm Serv., Inc. v. Ben Pearson, Inc.*,
   308 F.2d 18 (5th Cir. 1962) .................................................................................................... 6

*Morse v. Mut. Fed. Sav. & Ass'n*,
   536 F. Supp. 1271 (D. Mass. 1982) .................................................................................. 18 n. 4

*Moskowitz v. Washington Mut. Bank, F.A.*,
   768 N.E.2d 262 (Ill. App. Ct. 2002) ...................................................................................... 17

*Navarro-Miranda v. Ashcroft*,
   330 F.3d 672 (5th Cir. 2003) ................................................................................................... 8

*Pontchartrain Leasing Co. v. First Nat'l Bank of Commerce*,
   Civ. A No. 86-1541, 1987 WL 4932 (E.D. La. June 24, 1987) ................................................ 10

*Purcell v. Universal Bank, N.A.*,
   No. 01-CV-2678, 2003 WL 1962376 (E.D. Pa. Apr. 28, 2003) ................................................ 13

*Quigley v. Pennsylvania Higher Educ. Assistance Agency*,
   No. C 00-1661, 2000 U.S. Dist. LEXIS 19847 (N.D. Cal. Nov. 9, 2000) ................................. 12

*Riley v. General Motors Acceptance Corp.*,
   226 F. Supp. 2d 1316 (S.D. Ala. 2002) .......................................................................... 13 n. 3

*Rosenberg v. Wash. Mut. Bank*,
   No. A-5596-02T3, 2004 N.J. Super. LEXIS 190 (N.J. Super. Ct. App. Div. Mar. 22,
   2004) ..................................................................................................................................... 17

*Sehl v. Safari Motor Coaches, Inc.*,
   No. C 01-1750 SI, 2001 U.S. Dist. LEXIS 12638 (N.D. Cal. Aug. 13, 2001) .......................... 16

*Smith v. Cooper/T. Smith Corp.*,
   846 F.2d 325 (5th Cir. 1988), *op. modified on other grounds*, 886 F.2d 755
   (5th Cir. 1989)........................................................................................................................ 10

*Tubos Acero De Mexico S.A. v. Am. Int'l Inv. Corp.*,
   292 F.3d 471 (5th Cir. 2002) ................................................................................................. 11

*Tuxedo Beach Club Corp. v. City Fed. Sav. Bank*,
   749 F. Supp. 635 (D.N.J. 1990) ...................................................................................... 18 n. 4

*U.S. Bank Nat'l Ass'n v. Clark*,
  807 N.E.2d 1109 (Ill Ct. App. 2004) .......................................................................................19

*Vazquez-Garcia v. Trans Union De Puerto Rico*,
  222 F. Supp. 2d 150 (D.P.R. 2002)..................................................................................13 n. 3

*Whitesides v. Equifax Credit Info. Servs.*,
  125 F. Supp. 2d 807 (W.D. La. 2000) .....................................................................................15

*Williams v. Experian Info. Solutions, Inc.*,
  No. 2:02-CV-38, 2002 WL 31133235 (E.D. Tex. Aug. 6, 2002)...............................................15

*Williams v. Travelers Ins. Co.*,
  19 So. 2d 586 (La. Ct. App. 1944).............................................................................................7

## STATUTES, REGULATIONS, AND RULES

12 U.S.C.
  § 1461 ..........................................................................................................................................9
  § 1462 ....................................................................................................................................9 n. 2
  § 1462a ........................................................................................................................................9

15 U.S.C.
  § 1604 ..........................................................................................................................................9
  § 1607 ..........................................................................................................................................9
  § 1640 ..........................................................................................................................................5
  § 1681 ..........................................................................................................................................9
  § 1681a ........................................................................................................................................7
  § 1681h ......................................................................................................................................12
  § 1681s ........................................................................................................................................9
  § 1681s-2 ....................................................................................................................................5
  § 1681t ......................................................................................................................................11
  § 1692a ........................................................................................................................................3
  § 1692k ........................................................................................................................................5

12 C.F.R.
  § 226.16 ......................................................................................................................................9
  § 500 ............................................................................................................................................9
  § 560.2 ........................................................................................................................................9

55 Fed. Reg. 18804 (1990) .............................................................................................................9

61 Fed. Reg. 50951, 50972 (1996) ..........................................................................................19 n. 4

140 Cong. Rec. H9811..................................................................................................................14

140 Cong. Rec. H9815..................................................................................................................14

Va. Code Ann. § 6.1-391.1 .............................................................................................................8

La. Rev. Stat. § 9:3511................................................................................................................6

La. Rev. Stat. § 51:1406.............................................................................................................8

La. Rev. Stat. § 51:1409...........................................................................................................11

La. Rev. Stat. § 51:1418.............................................................................................................7

## INTRODUCTION

The opening brief filed herein and plaintiff's response thereto may appear to the Court as two ships passing in the night. Plaintiff's opposition fails to address numerous arguments, dispositive statutory language, and controlling and persuasive case law, such as the following illustrative examples: (1) the fact that his original complaint alleged that Capital One Bank sent the credit card solicitation at issue, but that the amended complaint alleges that Capital One Bank had nothing whatsoever to do with that solicitation, (2) Fifth Circuit case law showing that the FDCPA claim, as well as the Truth In Lending Act Claim ("TILA"), are time-barred, (3) the Louisiana Consumer Credit Law's plain language explicitly *permitting* the Virginal choice-of-law provision in Capital One Bank's Customer Agreements, (4) the Louisiana Unfair Trade Practices Act's ("LUTPA") own language excluding from its scope a bank's actions already subject to federal banking regulation, and (5) Office of Thrift Supervision regulations explicitly preempting state laws purporting to regulate "[a]ccess to and use of credit reports."

Plaintiff should not be able to save his action from dismissal by glossing over arguments in the opening brief and ignoring dispositive statutory, regulatory, and judicial language. Plaintiff fails to state any claim, either under federal, Virginia, or Louisiana law. Plaintiff has already changed his theories of liability and allegations between the original complaint, the amended complaint, and his response to the motion to dismiss the amended complaint. With all due respect, enough is enough. The Court should grant defendants' motion and dismiss this action without leave to amend.[1]

---

[1] Because plaintiff's opposition confirms that plaintiff fails to state a claim, the Court need not reach the summary judgment portion of defendants' motion. Defendants do not discuss the summary judgment portion of their opening brief any further herein, but note that they object to "Plaintiff's Statement of Contested Facts in Opposition to Motion to Dismiss or, Alternatively, Motion for Summary Judgment Filed by Defendant." That document contains no supporting citations to any evidence whatsoever.

# ARGUMENT

## I.   PLAINTIFF DOES NOT STATE ANY FEDERAL CLAIM.

### A.   Plaintiff Does Not Sufficiently Allege an FDCPA "Debt Collector."

#### 1.   Plaintiff Ignores the Fact that His Amended Complaint Now Claims that Capital One Bank Had Nothing to Do with the Second Credit Card Solicitation.

The opening brief explains that plaintiff's original complaint alleged that plaintiff incurred a debt with Capital One Bank that plaintiff did not pay and that Capital One *Bank* sent him the solicitation for the second credit card account about which plaintiff complains.   Defendants' Memorandum of Points and Authorities in Support of Motion to Strike Allegations from and to Dismiss the First Amended and Supplemental Complaint or in the Alternative, for Summary Judgment, filed Apr. 16, 2004 ("Mem.") at 7-9.   Based on the original allegation that Capital One Bank sent the solicitation regarding the second credit card, Capital One Bank's motion to dismiss the original complaint explained that Capital One Bank was both the original "creditor" on plaintiff's debt and also the entity that sent the solicitation regarding the second credit card account, and as such, was not an FDCPA "debt collector."   Mem. at 9.   After Capital One Bank fully briefed its prior motion to dismiss, showing plaintiff that he failed to state an FDCPA claim or any claim at all, plaintiff filed an amended complaint with remarkably different FDCPA allegations, which now claims that Capital One Bank had nothing to do with the second solicitation.   Mem. at 7-9.

In response, plaintiff simply baldly claims that there was no material change between his original complaint and the amended complaint, and plaintiff does not even acknowledge, let alone address, the fact that he has now reversed himself and claimed that Capital One Bank had nothing to do with the second solicitation.   Plaintiff's Response and Opposition to Motion to Strike Allegation from and to Dismiss the First Amended and Supplemental Complaint, or in the Alternative for Summary Judgment Filed by Defendants, filed May 24, 2004 ("Opp.") at 4-5.   Plaintiff should not be rewarded for contradicting himself.   Under well-established authority, the Court can and should consider only the original complaint's allegation that Capital One Bank sent the solicitation associated with the second credit card account. *See* Mem. at 9-10.   Because Capital One Bank is not

an FDCPA "debt collector" here, Mem. at 6-7, a fact which plaintiff does not dispute anywhere in his opposition, *see generally* Opp., plaintiff fails to state an FDCPA claim.

> **2.    Even if the Court Were to Consider Plaintiff's New, Contradictory
> Allegation, the Amended Complaint Fails to Allege that Capital One,
> F.S.B. or Capital One Services, Inc. Are "Debt Collectors."**

The opening brief explains that even if the Court were to consider plaintiff's new, contrary allegation that Capital One Bank had nothing to do with the solicitation at issue here, and that instead, the "CapOne New Account Offerors" sent the solicitation, the amended complaint still fails to show that any entity acted as a "debt collector." Mem. at 11-12.

As explained in the opening brief, the FDCPA carves out a broad exception from its definition of the term "debt collector" for any entity acting with regard to a debt that its affiliate or parent or subsidiary originated. Mem. at 11-12 (citing 15 U.S.C. § 1692a(6)(B)). Specifically, "'a corporate affiliate is excluded from the Act's coverage so long as it satisfies two conditions:  (1) the affiliate collects debts only for entities with which it is affiliated or related; and (2) the principal business of the affiliate is not debt collection.'" Mem. at 11 (quoting *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) (citing 15 U.S.C. § 1692a(6)(B)). Plaintiff's amended complaint does not sufficiently allege that Capital One, F.S.B. or Capital One Services, Inc. collect debts for unrelated third parties or that these entities' "principal business" is the collection of debts. Mem. at 11-12.

The only reference at all that plaintiff's opposition makes to this section of the opening brief is to cursorily state that he has already addressed Capital One, F.S.B. and Capital One Services, Inc.'s argument. He claims to have previously addressed this argument at pages 19 through 27 of plaintiff's prior opposition, filed on February 2, 2004, in response to Capital One *Bank*'s motion to dismiss the *original* complaint. *See* Opp. at 5 n.6 (stating that plaintiff previously responded to the argument on pages 11-12 of the current motion to dismiss [which plaintiff erroneously refers to as section II[A][1][*a*], rather than the correct section label II[A][1][*c*]]).

To the contrary, plaintiff's prior opposition did *not* address Capital One, F.S.B. and Capital One Services, Inc.'s argument that plaintiff does not sufficiently allege the narrow circumstances in

which affiliates act as "debt collectors." *See generally* Response and Opposition to Motion to Dismiss or, Alternatively, Motion for Summary Judgment Filed by Defendant, filed Feb. 2, 2004 ("Prior Opp.") at 19-27. Indeed, because the original complaint specified Capital One *Bank* as the only defendant and entity to send the solicitation at issue, the motion to dismiss the original complaint did not even address whether or not plaintiff had sufficiently alleged that Capital One, *F.S.B.* and Capital One *Services, Inc.* acted as FDCPA "debt collectors." *See generally* Defendant Capital One's Memorandum of Points and Authorities in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment, filed Nov. 5, 2003. The first amended complaint fails to allege that Capital One, F.S.B. and Capital One Services, Inc. collect debts for unrelated third parties or that these entities' "principal business" is the collection of debts, *see* Mem. at 11-12, and as a result, plaintiff has not sufficiently alleged that Capital One, F.S.B. and Capital One Services, Inc. are FDCPA "debt collectors."

Plaintiff does not sufficiently allege that any entity acted as a "debt collector" here, and the Court should dismiss the FDCPA claim for this reason alone.

**B.     The FDCPA Claim and the TILA Claim Are Time-Barred.**

The opening brief explains that the FDCPA claim also fails for the independent reason that it is time-barred, Mem. at 12, and further details that plaintiff's TILA claim is likewise untimely, Mem. at 12-14.

In response, plaintiff highlights that he alleges that plaintiff's previous attorney, Mr. Pitre, subsequently wrote to defendants, and defendants wrote back in August, 2002. Opp. at 5 (referring to pages 13-19 and pages 25-27 of Prior Opp.). Plaintiff claims that the statute of limitations did not begin running until defendants wrote back to Mr. Pitre in August, 2002. *Id. Dawkins* squarely defeats this argument. *See Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241 (5th Cir. 1997) (per curiam), *corrected by* 1997 U.S. App. LEXIS 12696, at *1 (5th Cir. Apr. 8, 1997). In *Dawkins*, just as in this case, plaintiff hired an attorney, who wrote to the creditor, Sears, and Sears "eventually" conducted an internal investigation and decided not to absolve plaintiff from the debt. 109 F.3d at 242. Yet *Dawkins* specifically found that the statute of limitations began to run when plaintiff

4

"initially hired an attorney," *id.* at 243, who wrote to Sears, and not at the later point when Sears responded to the attorney's letter.

The date of the occurrence of the violation is "[o]n or about December 17, 2001," when plaintiff admits he received the allegedly deceptive credit card solicitation.  First Amended and Supplemental Complaint & Demand for Jury Trial, filed Mar. 23. 2004 ("Am. Compl.") ¶ 16.  The statute of limitations normally begins to run on that date, *see* 15 U.S.C. § 1640(e) & 15 U.S.C. § 1692k(d), but even assuming that the statute of limitations was equitably tolled, it began to run in January 2002, when plaintiff received the allegedly erroneous billing statement.  Mem. at 13-14 (citing Am. Compl. ¶¶ 26-27).  In any event, it certainly began to run by June 10, 2002, by which time plaintiff had received the allegedly incorrect account statement, had inquired of Capital One Bank himself about the statement, and had hired an attorney in May 2002 to look into the matter, who then wrote to Capital One Bank on June 10, 2002, with an inquiry and dispute of the debt.  *See* Am. Compl. ¶ 38 ("Pitre wrote defendants a letter on June 10, 2002, to dispute the validity of the debt.").  Because this action was not filed until more than a year later, on July 30, 2003, plaintiff's TILA and FDCPA claims are barred by the statute of limitations.

**C.   Plaintiff Admits that He Does Not State an FCRA Claim.**

Plaintiff's second allegation of wrongful conduct is that Capital One allegedly furnished inaccurate information about plaintiff to credit reporting agencies.  Mem. at 18-19.  Section 1681s-2 of the federal Fair Credit Reporting Act governs the conduct of entities that furnish information to credit reporting agencies.  Mem. at 18-19 (discussing 15 U.S.C. § 1681s-2).  Plaintiff's opposition states that plaintiff has not attempted to assert a claim under either 15 U.S.C. 1681s-2(a), Opp. at 8-9, or under section 1681s-2(b), Opp. at 9 (incorporating page 32 of Prior Opp.).  Because plaintiff admits that he has not stated a claim under either section 1681s-2(a) or section 1681s-2(b), the only two FCRA subsections that could apply under the allegations of this case, plaintiff has not stated an FCRA claim.

II.   **PLAINTIFF FAILS TO STATE ANY CLAIM UNDER VIRGINIA OR LOUISIANA LAW.**

   A.   **Plaintiff Cannot Maintain Any Claim Under Virginia Law.**

      1.   **All of Capital One's Customer Agreements Contain the Virginia Choice-of-Law Provision, Which the Louisiana Consumer Credit Law Explicitly Permits.**

The opening brief explains that, based on the Virginia choice-of-law provision in Capital One's customer agreements, Virginia is the state law that applies here, and plaintiff cannot maintain any claim under Virginia law. Mem. at 15-18. Plaintiff asserts three arguments that Virginia law should not apply, none of which is persuasive.

First, plaintiff argues that because he contends that the solicitation that he received did not inform him that his unpaid debt would be placed on his new account, the Virginia choice of law provision in Capital One's customer agreements does not apply to him. *See* Opp. at 6.  But, regardless of plaintiff's dispute that the solicitation that he received did not inform him that his unpaid debt would be transferred to his new account, his complaint and opposition admit that he previously had a credit card account with Capital One, and that in or about December 2001, he opened another credit card account with Capital One. Am. Compl. ¶¶ 10-16. Plaintiff does not and cannot dispute that "each and every account agreement that Capital One enters into with its cardholders contains a choice-of-law provision selecting Virginia and federal law as the governing law." Mem., Ex. C ¶ 16.  In other words, regardless of the particulars of the other terms in the solicitations that plaintiff received, plaintiff's customer agreements with Capital One contained the Virginia choice-of-law clause.

Second, plaintiff argues that La. Rev. St. § 9:3511(A), part of the Louisiana Consumer Credit Law, bars enforcement of the Virginia choice of law provision.  Opp. at 6-7.  But to the contrary, section 9:3511(a) *allows* parties to choose that either "the law of the place wherein the consumer credit transaction was entered into or the law of the residence of the buyer or debtor shall apply." La. Rev. Stat. § 9:3511(A).

A contract is entered into "where an offer is accepted or where the bargain becomes mutually binding on both parties." *Modern Farm Serv., Inc. v. Ben Pearson, Inc.*, 308 F.2d 18, 22 (5th Cir.

6

1962) (affirming Louisiana federal district court's decision that Arkansas law governed plaintiff's state law claim where offer accepted and contract became "completed transaction" in Arkansas); *see also Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 306, 314 (5th Cir. 1988) ("[A] contract is considered executed at the place where the offer is accepted or where the last act necessary to a meeting of the minds or to completing the contract is performed.") (quoting *Williams v. Travelers Ins. Co.*, 19 So. 2d 586, 588 (La. Ct. App. 1944)).

Here, as plaintiff admits, Capital One Bank's principal place of business is Virginia.  Am. Compl. ¶ 3(a).  Federal law provides that when a credit card applicant, such as Deaville here, returns a completed application for a credit card, the grant of the offer made in the bank's credit card solicitation is "*conditioned on* . . . [t]he consumer being determined, based on information in the consumer's application for the credit . . . to meet specific criteria."   15 U.S.C. § 1681a(l)(1) (emphasis added).  In other words, the bank need only accept an individual's completed application for credit "*if* the consumer is determined . . . to meet . . . specific criteria."  15 U.S.C. § 1681a(l) (emphasis added).  Thus, the contract is complete when and only when Capital One Bank, in Virginia, evaluates whether the individual who chose to complete the credit card application meets the necessary criteria.  Thus, because Virginia law is the "law of the place wherein the consumer credit transaction was entered into," La. Rev. Stat. § 9:3511(A), the Louisiana Consumer Credit Card Law in fact ratifies the application of Virginia law.

### 2.   The Louisiana Consumer Credit Card Law's Specific Allowance of the Virginia Choice of Law Provision Trumps the LUTPA's General Provision.

Third, plaintiff erroneously argues against enforcement of the Virginia choice of law provision by contending that the Louisiana Unfair Trade Practices Act ("LUTPA") bars the Virginia choice of law provision.

Even assuming (without conceding) that the LUTPA bars a choice of law provision, the LUTPA is a law of general application, addressing "consumer transactions."  La. Rev. Stat. § 51:1418(C).  In comparison, the Louisiana Consumer Credit Card Law specifically addresses "consumer *credit* transaction[s]."  *See, e.g.*, La. Rev. Stat. § 9:3511(A) (emphasis added).  Plaintiff

here admits that the transaction at issue is a credit transaction. *See, e.g.*, Am. Compl. ¶ 21.  As a result, the more specific Louisiana Consumer Credit Card Law, which specifically permits the Virginia choice of law provision, applies rather than the LUTPA. *See, e.g., Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003) ("As a fundamental rule of statutory interpretation, specific provisions trump general provisions.").

Because the Louisiana Consumer Credit Card Law permits the Virginia choice-of-law provision, Virginia law applies; as explained in the opening brief, Mem. at 15-16, plaintiff cannot maintain any claim under Virginia law.

### B.     Plaintiff Cannot Maintain Any Claim Under the Louisiana Unfair Trade Practices Act.

Although Virginia law applies, in an abundance of caution, defendants discuss below the only possible Louisiana state law claim that plaintiff has even identified — a violation of the LUTPA.  Plaintiff's purported LUTPA claim clearly fails for two independent reasons.

#### 1.     By Its Own Terms the LUTPA Does Not Apply Where, as Here, Defendants' Alleged Actions Are Subject to Federal Banking Regulation.

The LUTPA itself specifies that it "shall *not* apply to:  (1) [a]ctions or transactions subject to the jurisdiction of . . . federal banking regulators who possess authority to regulate unfair or deceptive trade practices."  La. Rev. St. § 51:1406(1) (emphasis added).  "The history and intent behind the exemption in R.S. 51 is to avoid duplication and exclude financial institutions which are regulated by other authorities as to unfair or deceptive trade practices." *First Fin. Bank, FSB v. Butler*, 492 So. 2d 503, 506 (La. Ct. App. 1986).

Capital One Bank, a Virginia state-chartered limited purpose credit card bank, *see* Va. Code An.. § 6.1-391.1(C), as well as Capital One, F.S.B., a federal saving bank, are both subject to regulation by federal banking regulators for the actions that plaintiff alleges here.  First, the Federal Reserve Board regulates unfair or deceptive practices with regard to credit card solicitations. *See* Mem. at 12-13 (The Federal Reserve Board's regulation ("Regulation Z") implementing the federal Truth In Lending Act regulates, *inter alia*, unfair or deceptive credit card solicitations (citing

12 C.F.R. § 226.16(a) (2004)); *see also* TILA, 15 U.S.C. § 1604(a) (Congress providing that the Federal Reserve Board "shall prescribe regulations to carry out the purposes of [TILA]"); 15 U.S.C. § 1607(a)(1)(B), § 1607(a)(2), § 1607(c) (Congress respectively providing the Federal Reserve Board with power to enforce TILA's requirements as to member banks of the Federal Reserve System, providing the Office of Thrift Supervision with power to enforce TILA's requirements as to federal savings associations,[2] and providing the Federal Trade Commission with residual power to enforce TILA's requirements as to financial institutions not specifically covered by the Federal Reserve Board's or the OTS's jurisdiction).

Second, the federal Fair Credit Reporting Act extensively regulates the furnishing of information to credit bureaus, *see* 15 U.S.C. §§ 1681 *et seq.*, as do the Rules and Regulations on the FCRA issued by the Federal Trade Commission ("FTC"). *See* Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804 (1990); *see also* 15 U.S.C. § 1681s; 15 U.S.C. § 1681s-2(d) (providing that the FTC may bring an enforcement action against any financial institution acting as a furnisher of information and who provides inaccurate information).

Last, the opening brief explained that the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. §§ 1461 *et seq.*, and regulations promulgated by a federal banking regulator, the Office of Thrift Supervision ("OTS"), 12 C.F.R. pts. 500 *et seq.* (2004), also extensively regulate Capital One, F.S.B., including with regard to the actions at issue here. Mem. at 22-24; 12 U.S.C. § 1462a(b)(2) (authorizing the Director of the OTS to "prescribe such regulations and issue such orders as the Director may determine to be necessary for carrying out [the HOLA]"); 12 C.F.R. § 560.2(a) and § 560.2(b)(8)-(9) (2004) (OTS regulation occupying the field of lending regulation for federal savings banks, including, "without limitation," preempting state laws that purport to regulate savings

---

[2] The term "[f]ederal savings association" is synonymous with the term "[f]ederal savings bank." *See, e.g.*, 12 U.S.C. § 1462(5).

banks' activities regarding "[a]ccess to and use of credit reports" and with regard to "[d]isclosure and advertising" and "other credit-related documents").

Construing La. Rev. St. 51:1406(1) in light of extensive federal banking regulation, both state and federal courts have repeatedly found that the LUTPA by its own terms does *not* apply to either state chartered banks or nationally chartered banks. *See, e.g., Pontchartrain Leasing Co. v. First Nat'l Bank of Commerce*, Civ. A. No. 86-1541, 1987 WL 4932, at *3 (E.D. La. June 24, 1987) ("[Defendant] BNO was a state chartered bank, and [defendant] FNBC is a nationally chartered bank. Both are banks within the terms of the statute and are therefore exempt from the Unfair Trade Practices Act." Based on La. Rev. St. 51:1406, the Court thus dismissed the LUTPA claim.); *Blanchard & Co. v. Barrick Gold Corp.*, No. Civ. A. 02-3721, 2003 WL 22071173, at *11 (E.D. La. Sept. 3, 2003) (following *Pontchartrain* and "find[ing] that Morgan [defendant J.P. Morgan Chase & Company], as a financial institution regulated by other authority is expressly exempt from the Act [the LUTPA]"); *First Fin. Bank*, 492 So. 2d at 505 (stating that "federal savings bank[s are] extensively regulated with respect to unfair and/or deceptive practices under titles 12 and 15 of the United States Code" and therefore finding federal saving bank exempt from the LUTPA pursuant to La. Rev. St. 51:1406); *cf. Smith v. Cooper/T. Smith Corp.*, 846 F.2d 325, 329 n.3 (5th Cir. 1988) (finding that the LUTPA "explicitly excludes this transaction from its own reach" where the securities transaction at issue fell under the jurisdiction of the state bank commissioner), *op. modified on other grounds*, 886 F.2d 755 (5th Cir. 1989).

In attempting to bring a LUTPA claim here, plaintiff seeks exactly what section 51:1406 mandates should be avoided: duplication between the LUTPA's scope and subject matter that federal regulation already covers. *See First Fin. Ban*, 492 So. 2d at 506. The Court should reject plaintiff's attempt to distort the LUTPA to cover transactions that the Louisiana Legislature clearly stated are excluded from the Act's scope. Where, as here, the "[a]ction[] or transaction[] [is] subject to the jurisdiction of . . . federal banking regulators who possess authority to regulate unfair or deceptive trade practices," La. Rev. St. 51:1406(1), the LUTPA does not apply. For this reason alone, any purported cause of action under the LUTPA fails to state a claim.

### 2. Any LUTPA Claim Would Also Be Barred by the LUTPA's One-Year Statute of Limitations, Which Is Not Subject to Tolling.

Plaintiff also cannot maintain any LUTPA claim for the further reason that any such claim is time-barred. The LUTPA has a one-year statute of limitations. La. Rev. St. 51:1409(E) ("The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."). This one year period "is *not* subject to suspension, interruption, or renunciation." *Tubos Acero De Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 481 n.4 (5th Cir. 2002) (emphasis added). Thus, even where plaintiff alleges that his cause of action was "not known or reasonably knowable by the plaintiff," the statute of limitations is *not* tolled but rather continues to run uninterrupted from the time of the act alleging constituting the LUTPA violation. *Id.* Because any LUTPA claim accrued in December, 2001, *see* Mem. at 12 & and section I.B, *supra*, and this action was not filed until July 2003, any LUTPA claim is untimely.

### C. Any and All State Law Claims Based on Furnishing of Information to Credit Bureaus Fail for the Further Reason that the FCRA Preempts Such Claims.

### 1. Section 1681t(b)(1)(F)'s Plain Language Preempts All State Claims Relating to Furnishers of Information.

For a further, independent reason, plaintiff cannot maintain any state law claim based on his allegation that defendants furnished incorrect information to credit bureaus. Mem. at 19-21. Sections 1681s-2(a) and 1681s-2(b) comprehensively regulate furnishers of information. *See id.*; 15 U.S.C. § 1681s-2.

Section 1681t(b)(1)(F) in turn provides that plaintiffs may not maintain any state law claims that relate to the broad subject matter that section 1681s-2 covers:

> No requirement or prohibition may be imposed under the laws of any State —
>
> (1) with respect to any subject matter regulated under — . . .
>
> (F) section [1681s-2 of this title], relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F). Section 1681t(b)(1)(F) thus preempts any and all state law claims that plaintiff here attempts to maintain based on defendants' alleged conduct as furnishers of information. *Id.*

Well-reasoned case law confirms section 1681t(b)(1)(F)'s plain meaning.  *See Quigley v. Pennsylvania Higher Educ. Assistance Agency*, No. C 00-1661 CRB, 2000 U.S. Dist. LEXIS 19847, at *1 (N.D. Cal. Nov. 9, 2000); *Hasvold v. U.S. Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 502-03 (W.D. Tenn. 1999).

Based on information that defendants had furnished to consumer reporting agencies, the *Quigley* plaintiff alleged violation of a California statute.  2000 U.S. Dist. LEXIS 19847, at *4.  In dismissing this claim, the *Quigley* court explained that section 1681t(b)(1)(F) "*prohibits the states from regulating the furnishing of information to consumer protection agencies.*"  *Id.* at *7 (emphasis added).

*Hasvold* follows *Quigley* in considering section 1681t(b)(1)(F)'s preemptive effect.  The *Hasvold* plaintiff argued that in light of 15 U.S.C. § 1681h(e), section 1681t(b)(1)(F) did not preempt her state law claims.  *Hasvold*, 194 F. Supp. 2d at 1231; *see* Opp. at 34-36.  The *Hasvold* court correctly rejected that argument.  194 F. Supp. 2d at 1238-39.  Section 1681h(e) provides:

> Except as provided in sections [1681n and 1681o of this title], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [section 1681g, 1681h, or 1681m of this title], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

The *Hasvold* plaintiff argued that section 1681h(e) provides only a qualified immunity for information furnishers, and that she could maintain claims for defamation, invasion of privacy, and negligence if she alleged that defendants furnished information to consumer reporting agencies with malice or willful intent to injure.  *Hasvold*, 194 F. Supp. 2d at 1234, 1238.  The *Hasvold* court also considered the argument that Congress did not amend the language of section 1681h when it amended the FCRA in 1996 to address furnishers of information.  *Hasvold* rejected these arguments, explaining that

> '[w]hile Congress did not specifically provide in the 199[6] amendments that section 1681t supercedes 1681h, *it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action "relating to the responsibilities of persons who furnish information to consumer reporting agencies." Any other interpretation would fly in the face of the plain meaning of the statute.* \*\*\*\*\*\* *The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information . . . .'*

*Hasvold*, 194 F. Supp. 2d at 1239 (quoting *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (quoting 15 U.S.C. § 1681t(b)(1)(F))) (emphasis added).

      *Hasvold* held that "federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information," dismissing plaintiff's state law claims for libel, interference with prospective advantage, and invasion of privacy. *Hasvold*, 194 F. Supp. 2d at 1230, 1239; *see also Carney*, 57 F. Supp. 2d at 502-503 (cited and described in Mem. at 14); *Purcell v. Universal Bank, N.A.*, No. 01-CV-2678, 2003 WL 1962376, at *5-6 (E.D. Pa. Apr. 28, 2003) (following *Jaramillo* and dismissing plaintiff's defamation and invasion of privacy claims based upon the furnishing of information to consumer reporting agencies because "any state law claims based upon reports to credit agencies are preempted in light of precedent as well as the plain language of § 1681t(b)(1)(F)").[3]

---

[3] Plaintiff points out that the *Jaramillo* court reconsidered its original order. Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (citing reconsideration order at No. 00-CV-5876, 2001 U.S. Dist. LEXIS 10221 (E.D. Pa. June 20, 2001)). Plaintiff, however, is wrong that *Jaramillo* reinstated all of plaintiff's state law claims. *See* Opp. at 9 (referring to pages 36 through 40 Prior Opp.). The court reinstated only plaintiff's defamation claim (count IV), but not the other state law claims for violation of the Pennsylvania Consumer Protection Law or for interference with contractual relations (counts V and VI). *See Jaramillo*, 155 F. Supp. 2d at 358 (identifying counts V and VI); 2001 U.S. Dist. LEXIS 10221 (reinstating count IV only). In any event, *Purcell* recognizes that the *Jaramillo* court reconsidered its decision, but *Purcell* nonetheless follows the original decision in *Jaramillo*, noting that "other courts have found the original opinion persuasive and have held that similar state law claims are in fact preempted by 15 U.S.C. § 1681t(b)(1)(F). We likewise find that any state law claims based upon reports to credit agencies are preempted in light of precedent as well as the plain language of § 1681t(b)(1)(F)." *Purcell*, 2003 WL 1962376, at *5 (citing *Riley v. Gen. Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1323 (S.D. Ala. 2002), and *Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F. Supp. 2d 150 (D.P.R. 2002)).

2.   **Plaintiff Provides No Support for His Argument that Section 1681t(b)(1)(F) Is Meant to Preempt Only Claims for Violation of State "Mini-Credit Reporting Acts."**

Plaintiff does not even attempt to analyze section 1681t(b)(1)(F)'s plain language.  *See generally* Opp.  Plaintiff merely argues that section 1681t(b)(1)(F) "was only intended to displace and preempt state **mini-credit reporting acts** [exempting Massachusetts and California by specific reference] and similar statutory laws designed to address credit reporting functions which are regulated by the FCRA."  Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (this quote appears in Prior Opp. at pages 36-37) (emphasis and brackets in original).  To support this argument, plaintiff cites thirteen cases in two footnotes.  *See* Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (the thirteen cases appear in Prior Opp. at page 37 n.68 and at page 40 n.82).  Not one of these cases, however, actually supports plaintiff's contention that section 1681t(b)(1)(F) was somehow only meant to preempt what plaintiff terms "mini-credit reporting acts."

a)   **Legislative History Supports Capital One, Not Plaintiff.**

Plaintiff first relies on *Kodrick v. Ferguson*, 54 F. Supp. 2d 788 (N.D. Ill. 1999), claiming that *Kodrick* recites House Representative Thomas' remark "that 1681t(b)(1)(F) was to preempt the patchwork of state mini-credit reporting acts.  The same is true of Republican Rep. Castle's remarks listed."  Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (this quote appears in Prior Opp. at page 37 n.68); *see also* Opp. at 10 ("Section 1681t(b)(1)(F) only applies to state mini-credit reporting acts.").   Although plaintiff makes this claim, he does not actually quote the Representatives' comments.  In truth, *Kodrick* and the legislative history that it quotes confirm that section 1681t(b)(1)(F) preempts *all* state claims relating to furnishers of information.  *Kodrick*, 54 F. Supp. 2d at 794 (stating, without limitation, that section 1681t(b)(1)(F) gives furnishers of information "preemption from state laws regulating the acquisition and disclosure of consumer credit information, even where the state laws provide greater protection for consumers"); *id.* (quoting Representative Thomas as stating, without limitation, that "'companies will not have to comply with a patchwork of State laws'") (quotation from 140 Cong. Rec. H9811); *id.* (quoting Representative Castle as stating, without limitation, that "[t]his federal preemption will allow business to comply

with one law on credit reports rather than a myriad of State laws") (quotation from 140 Cong. Rec. H9815).

> **b)**   ***Whitesides* and Similar Cases Do Not Address Section 1681t(b)(1)(F).**

Next, plaintiff relies heavily on *Whitesides v. Equifax Credit Information Services, Inc.*, 125 F. Supp. 2d 807 (W.D. La. 2000). *See* Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (*see* Prior Opp. at pages 35-36 and n. 63, 40 n.82), Opp. at 10, 12. Defendant in *Whitesides* relied on section 1681h(e) and argued that plaintiff's state law claims failed because plaintiff did not show that defendant "'acted with malice or willful intent to injure.'" *See Whitesides*, 125 F. Supp. 2d at 811 (quoting defendant's motion for summary judgment).

*Whitesides* rejects this argument, interpreting section 1681h(e) to require a plaintiff to show malice only in connection with state law claims that are "'based on information disclosed pursuant to [section] 1681g, 1681h, or 1681m.'" 125 F. Supp. 2d at 811 (quoting 15 U.S.C. § 1681h(e)). *Whitesides* found that plaintiff's claims against the defendant furnisher of information were not based on sections 1681g, 1681h, or 1681m, and "[t]herefore, the necessity of malice or willful intent is obviated." 125 F. Supp. 2d at 811.

Besides making its section 1681h(e) argument, defendant had apparently not made any mention of section 1681t(b)(1)(F) in its brief, as the *Whitesides* opinion does not mention any such argument, and indeed, does not cite section 1681t(b)(1)(F) at all.  *See generally Whitesides*, 125 F. Supp. 2d 807.  Thus, after finding that section 1681h(e) *did not apply* to the defendant furnisher of information, there was no consideration of whether section 1681t(b)(1)(F) *does apply* to furnishers of information, such as preempting all state claims against furnishers that relate to the broad subject matter that section 1681s-2 regulates. *Whitesides* simply is not authority one way or the other on the interpretation of section 1681t(b)(1)(F).  The same is true of other decisions on which plaintiff relies. *See* Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (Prior Opp. at page 40 n.82); *Williams v. Experian Info. Solutions, Inc.*, No. 2:02-CV-38, 2002 WL 31133235, at *1 (E.D. Tex. Aug. 6, 2002) (citing only section 1681h(e) and relying on *Whitesides*); *Kronstedt v.*

*Equifax, CSC*, No. 01-C-0052-C, 2001 U.S. Dist. LEXIS 25021, at \*54-57 (W.D. Wis. Dec. 14, 2001) (same).

In sum, section 1681t(b)(1)(F)'s plain language preempts all of plaintiffs' state law claims relating to defendants' actions as a furnisher of information. Plaintiff's only argument as to why the Court should decline to follow this plain language is that an alleged "second line of cases help [sic] that section 1681t was nothing more than a provision to preempt state mini-credit reporting statutes." Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (quoted language from Prior Opp. at 39). Although plaintiff cites thirteen cases in support of this argument, *see* Opp. at 9 (referring to pages 36 through 40 of Prior Opp.) (*see* Prior Opp. at 37 n.68, 40 n.82), none of these cases makes any such finding about section 1681t(b)(1)(F)'s meaning. Further, at least some of the cases that plaintiff cites support defendants' position. *See, e.g., Sehl v. Safari Motor Coaches, Inc.*, No. C 01-1750 SI, 2001 U.S. Dist. LEXIS 12638, at \*18 (N.D. Cal. Aug. 10, 2001) (pursuant to section 1681t(b)(1)(F), "states cannot regulate any subject matter relating to § 1681s-2 . . . ." ) (cited in the Prior Opp. at 29 & nn. 47-48 and at 34 n.58). This Court should follow section 1681t(b)(1)(F)'s plain language and find that all of plaintiff's state law claims relating to defendants' actions as a furnisher of information are preempted.

**D.**   **Any and All State Law Claims Against Capital One, F.S.B. Fail for the Further Reason that the HOLA and OTS Regulations Preempt Them.**

The opening brief explained that, as to Capital One, F.S.B., any and all state law claims fail for the independent reason that the HOLA and OTS regulations preempt state claims against federal savings banks based on (1) sending an allegedly misleading credit card solicitation, and (2) allegedly furnishing inaccurate information to credit bureaus. *See* Mem. at 21-24.

**1.**   **The HOLA and OTS Regulations Preempt State Law Claims Based on Plaintiff's Allegation that Capital One, F.S.B. Sent a Misleading Credit Card Solicitation.**

Plaintiff's opposition fails to respond to defendants' showing that the HOLA and OTS regulations preempt state claims against federal savings banks based on (1) above — *i.e.*, allegedly misleading credit documents, such as a credit solicitation. *See generally* Opp. at 12-16. Such claims

are preempted, as shown by the opening brief. Mem. at 23-24 (citing, *inter alia*, *Moskowitz v. Wash. Mut. Bank, F.A.*, 768 N.E.2d 262, 266 (Ill. App. Ct. 2002). Further, a recently decided case confirms such showing. *See Rosenberg v. Wash. Mut. Bank*, No. A-5596-02T3, 2004 N.J. Super. LEXIS 190, at *14 (N.J. Super. Ct. App. Div. Mar. 22, 2004) (holding that section 560.2(b)(9) preempted plaintiffs' state law claims asserting that bank's billing statements failed to accurately disclose a "total amount due" figure) (relying on *Moskowitz* and *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1010-12 (E.D. Cal. 2002) (state regulations over disclosures in credit card agreements informing cardholders of the financial effects of only remitting the minimum monthly payment preempted)). The Court should find that any and all state law claims against Capital One, F.S.B. based on the allegedly misleading credit card solicitation are preempted.

### 2. The HOLA and OTS Regulations Preempt State Law Claims Based on Plaintiff's Allegation that Capital One, F.S.B. Furnished Incorrect Information to Credit Bureaus.

Plaintiff does respond to Capital One, F.S.B.'s argument that the HOLA and OTS regulations preempt state law claims based on plaintiff's allegation that Capital One, F.S.B. furnished inaccurate information to credit bureaus. Plaintiff argues that state law claims based on such an allegation are not preempted. *See* Opp. at 13-16. Plaintiff relies on *Hussey-Head v. World Savings & Loan Association*, 4 Cal. Rptr. 2d 171 (Cal. App. 2003), and *Bank of America v. City & County of San Francisco*, 309 F.3d 551 (9th Cir. 2002) (cited at Mem. at 23-24). But, *Bank of America* supports Capital One, F.S.B., not plaintiff, and *Hussey-Head* was wrongly decided.

First, *Bank of America* addresses local ordinances that purported to prohibit federal savings banks from charging individuals who were *not* customers of that particular bank but who used that bank's ATM, *e.g.*, to withdraw cash. *Bank of Am.*, 309 F.3d at 556. *Bank of America* holds that the ordinances "purport to regulate . . . lending-related practices of federal savings banks," and section 560.2(a) thus preempted the ordinances. *Bank of Am.*, 309 F.3d at 560.

Second, *Bank of America* helps to show that this Court should decline to follow *Hussey-Head*. In *Hussey-Head*, a California state court found that the HOLA and OTS regulations did not preempt plaintiff's state law claims based on the allegation that defendant had furnished inaccurate

information to credit bureaus.  *Hussey-Head*, 4 Cal. Rptr. 2d at 176-79.  *Bank of America* demonstrates that *Hussey-Head* too narrowly construed the OTS's preemption of state laws.

The OTS has "occupie[d] the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2(a).  The OTS regulations provide a non-exhaustive list of "[i]llustrative examples" of the types of state laws that are preempted, but because such list is merely "illustrative," even if a particular act or subject matter is not described, it is still within the exclusive purview of the HOLA and OTS regulations if it falls within the "field of lending regulation." *Id*. A broad range of acts and practices fall within the "field of lending regulation," as shown by the fact that the OTS regulations leave no room for a local ordinance charging a non-customer a fee for withdrawing cash from an ATM.  *Bank of America*, 309 F.3d at 560-61.

The act at issue here falls even more comfortably within the "field of lending regulation" than the practice at issue in *Bank of America*.  The complaint itself alleges that Capital One, F.S.B. inaccurately reported the *lending* agreement (the terms of the credit card solicitation) involving plaintiff.  That is, plaintiff alleges that the information that Capital One, F.S.B. purportedly furnished to credit bureaus was inaccurate because the reported balance on the second credit card account included the unpaid debt from the first credit card, but the lending agreement between plaintiff and Capital One, F.S.B. did not specify any such term.  *See, e.g.*, Am. Compl. ¶ 53.  Both section 560.2's plain language and *Bank of America* show that a state law purporting to regulate a federal savings bank's action in furnishing information regarding one of its *lending* recipients and regarding one of its *lending* agreements is preempted by the OTS's occupation of the field of *lending* regulation.  *See* 12 C.F.R. § 560.2(a) ("occup[ying] the entire field of lending regulation for federal savings associations"); *Bank of America*, 309 F.3d at 560-61.[4]

---

[4] Plaintiff also relies on *Fenning v. GlenFed Inc.*, 47 Cal. Rptr. 2d 715 (Cal. Ct. App. 1995), *Morse v. Mut. Fed. Sav. & Ass'n*, 536 F. Supp. 1271 (D. Mass. 1982), *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank*, 749 F. Supp. 635 (D.N.J. 1990), *Flanagan v. Germania, F.A.*, 872 F.2d 231 (8th Cir. 1989), and *Blair v. Nat'l Constr. Co.*, 611 F.2d 80 (5th Cir. 1980).  Opp. at 15-16.  All of these cases, however, are inapposite as they do not address section 560.2, the section whose preemptive scope is at issue here.  Indeed, section 560.2 was not effective until October 30, 1996,
(Footnote continues on next page.)

18

Finally, plaintiff takes issue with *U.S. Bank Nat'l Ass'n v. Clark*, 807 N.E.2d 1109 (Ill. App. 2004), and *Fidelity Nat'l Info. Solutions, Inc. v. Sinclair*, 2004 WL 764834, at *1 (E.D. Pa. 2004). Plaintiff critically refers to *Clark* and *Sinclair* and claims that only these two cases "have suggested that the OTS regs [section 560.2] might apply to 'access and use' of credit reports." Opp. at 16 (brackets in original). However, it is beyond dispute that section 560.2 applies to access and use of credit reports. Section 560.2 itself, in its "[i]llustrative examples" section, states that "the types of state laws preempted . . . include, without limitation, state laws purporting to impose requirements regarding: . . . (8) *Access to and use of credit reports*." 12 C.F.R. § 560.2(b)(8) (2004). Plaintiff thus claims that section 560.2 does not preempt state laws addressing furnishing information to credit reporting agencies because section 560.2 contains no exact language preempting state laws purporting to address "'access and use' of credit reports." Opp. at 16. Yet section 560.2 *does* contain *exactly* this language. 12 C.F.R. § 560.2(b)(8) (2004). Plaintiff has thus defeated his own argument that section 560.2 does not preempt state laws purporting to regulate information-furnishing to credit reporting agencies.

As with plaintiff's allegations that Capital One, F.S.B. sent a misleading credit card solicitation, the Court should find that section 560.2 preempts any and all state law claims based on plaintiff's allegation that Capital One, F.S.B. furnished inaccurate information to credit reporting agencies. Because the HOLA and OTS regulations preempt all state law claims based on the two types of unlawful conduct that plaintiff alleges here, plaintiff cannot maintain any state law claim against Capital One, F.S.B. for this further reason.

---

(Footnote continued from previous page.)

see 61 Fed. Reg. 50951, 50972 (1996), and thus these cases, all decided prior to that time, could not have considered the section at issue here.

## CONCLUSION

For the foregoing reasons, as well as those stated in defendants' opening brief, the Court should dismiss this action for failure to state a claim.

Dated: June 18, 2004                    Respectfully submitted,

                                        WIENER, WEISS & MADISON
                                        A Professional Corporation

                                        By:_____

                                           Larry Feldman, Jr., Bar #5503
                                           Mark L. Hornsby, Bar #18955
                                           333 Texas Street, Suite 2350
                                           P.O. Box 21990
                                           Shreveport, Louisiana 71120-1990
                                           (318) 226-9100
                                           (318) 424-5128 (FAX)

                                        ATTORNEYS FOR CAPITAL ONE BANK, CAPITAL
                                        ONE SERVICES, INC., and CAPITAL ONE, F.S.B

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served on counsel of record, Mr. David A. Szwak, Bodenheimer, Jones, Szwak & Winchell, L.L.P., 401 Market Street, Suite 240, American Tower, Shreveport, Louisiana 71101, by placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

Shreveport, Louisiana, this 18th day of June, 2004.

_____
OF COUNSEL