**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

HORACE DEAVILLE                             CIVIL ACTION NO. 03-1429

VERSUS                                      JUDGE S. MAURICE HICKS, JR.

CAPITAL ONE BANK, ET AL.                    MAGISTRATE JUDGE HAYES

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss, or, in the alternative, a Motion for Summary Judgment, filed by Capital One Bank, Capital One Services, Inc., Capital One Financial Corporation,[1] and Capital One, F.S.B. (hereinafter collectively referred to as "Defendants"). See Record Document 32. Based on the following analysis, the Court finds that there are no genuine issues of material fact as to Plaintiff Horace Deaville's claims under the Fair Debt Collection Practices Act ("FDCPA"), the Truth-in-Lending Act ("TILA") and Virginia state law. Thus, summary judgment in favor of Defendants Capital One Bank, Capital One Services, Inc., and Capital One, F.S.B. is proper as a matter of fact and law as to the FDCPA, TILA, and Virginia state law claims. Plaintiff Horace Deaville's Louisiana state law claims are dismissed without prejudice, as the Court declines to exercise supplemental jurisdiction over such pendent state law claims where it has dismissed all claims over which it had original jurisdiction.[2]

---

[1] Capital One Financial Corporation was dismissed without prejudice on April 27, 2004. See Record Documents 36.

[2] Defendants' Motion to Dismiss, or, in the alternative, Motion for Summary Judgment also contained a Motion to Strike allegations from the First Amended and Supplemental Complaint. Defendants argue that Plaintiff's amended complaint contains new, contradictory allegations as an attempt to change factual allegations to avoid dismissal, specifically with regard to his FDCPA claims. See Record Document 32 at 9. Plaintiff responded that any changes in the amended complaint were adequately explained and most resulted from "segregating the several Capital One entities named as aliases in

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Years ago, Plaintiff Horace Deaville (hereinafter referred to as "Plaintiff") applied for and received a credit card from Capital One Bank. See Record Document 27, ¶ 10. Plaintiff incurred charges on the Capital One Bank credit card and was ultimately unable to pay off the balance. See id., ¶¶ 11-12. Plaintiff's unpaid balance on the Capital One Bank credit card account prescribed under Louisiana's law of liberative prescription. See id., ¶ 13. Thus, Plaintiff's debt to Capital One Bank was legally and judicially unenforceable. See id., ¶ 14.

On or about December 17, 2001, Plaintiff received an offer in the mail for a pre-approved Visa credit card from "Capital One." See id., ¶ 16. Plaintiff believed that "Capital One" was a consortium of Capital One, F.S.B., Capital One Financial Corporation, and Capital One Services, Inc. See id., ¶ 16. Plaintiff collectively described the consortium as CapOne New Account Offerors. See id., ¶ 16.

Plaintiff maintains that the December 2001 credit card solicitation in no way suggested that he would be agreeing to pay the old, prescribed debt to Capital One Bank, as the credit card solicitation contained no reaffirmation language. See id., ¶¶ 17-18. Rather, Plaintiff simply believed that CapOne New Account Offerors were offering him a new credit card for his personal use. See id., ¶ 19. Plaintiff accepted the offer by signing the form and sending the documentation back to CapOne New Account Offerors. See id.,

---

the original complaint." Record Document 43 at 4-5. Plaintiff contends that his facts are well plead and not inconsistent. See id. at 5.
   Despite the argument on both sides regarding the Motion to Strike, such motion is essentially moot in light of this Court's ruling on Motion for Summary Judgment; thus, the Motion to Strike is **DENIED AS MOOT**.

¶ 21. The new account number was 4121-7421-1704-1759. See id., ¶ 25. Plaintiff maintains that he never agreed to any balance transfer into this new account. See id., ¶ 20. Plaintiff never received a credit card for this new account and never made any charges on the account. See id., ¶¶ 24-25.

Sometime after December 2001, Plaintiff received a billing statement from Capital One for the time period between December 3, 2001 and January 2, 2002. See Record Document 19, Exhibit A. The billing statement reflected two "PREV CAPITAL ONE BANK BAL" entries, both with the date of December 27, 2001. See id. The entries were for $600.00 and $678.00, for a total of $1,278.00. See id. The billing statement demanded a minimum payment of $51.00 to Capital One Services by January 28, 2002. See id. Plaintiff believed that the billing statement was erroneous and attempted to communicate with Capital One's customer relations via telephone between January and May 2002 regarding the billing statement. See Record Document 27, ¶¶ 26-27. Plaintiff alleges that Capital One failed to address his concerns, ignored him, and sought delay to hinder his efforts to investigate the erroneous billing statement. See id., ¶ 34. This was the only billing statement that Plaintiff ever received for the new credit card account. See id., ¶ 35.

Unable to get a satisfactory response regarding the allegedly erroneous billing statement, Plaintiff sought the assistance of a lawyer, Kenneth Pitre ("Pitre"). See id., ¶ 36. Pitre contacted Capital One Bank on behalf of Plaintiff. See Record Document 19, Affidavit of Kenneth Pitre, Exhibit A. Specifically, on June 10, 2002, Pitre wrote Capital One Bank and disputed the validity of Plaintiff's debt. See id. On August 8, 2002, Pitre resent the same letter labeled "SECOND REQUEST." See id., Affidavit of Kenneth Pitre.

On or about August 6, 2002, Amanda Mays ("Mays"), Executive Offices, Capital One

Services, Inc., wrote Pitre and acknowledged Plaintiff's disputes, concerns, and requests for information. See Record Document 19, Affidavit of Kenneth Pitre, Exhibit B. Mays stated that by virtue of reaffirmation language in the December 2001 credit card solicitation that Plaintiff signed and accepted, Plaintiff had revived the old, prescribed debt and authorized a balance transfer to the new account. See id. On or about September 24, 2002, Pitre wrote Mays and made further inquiries as to the accuracy of the billing statement. See id., Exhibit C. On November 29, 2002, Mays responded to Pitre and again stated:

> In December 2001, we mailed an application to Mr. Deaville, providing him with the opportunity to reaffirm the charged-off debt and to begin making payments. On December 26, 2001, we received a signed application from Mr. Deaville (which we included in our latest letter to your office). By accepting our offer, Mr. Deaville reaffirmed his previous debt, and accepted responsibility of payment. Due to non-payment for 180 consecutive days this account charged off on August 3, 2002.

Id., Exhibit D. On December 12, 2002, Pitre wrote Mays and stated that "[n]o place on the copy of the December, 2001 application you sent me which my client allegedly signed does it, even in fine print, advise him that he was reaffirming a debt. This appears to be a deceptive practice if not outright fraud." Id., Exhibit E. Mays responded on January 10, 2003 and assured Pitre that Capital One does not engage in deceptive practices. See id., Exhibit F. Specifically, Mays stated:

> By signing [the December 2001] offer, Mr. Deaville agreed to accept responsibility for his charged-off account. . . . He also acknowledged that he read the important disclosures that were attached to the application.

Id.

Defendants have admitted that Capital One Bank does not maintain the original copy of the entire credit card solicitation sent to each prospective customer. See Record

Document 32, Affidavit of Charles Clark, ¶ 4. "Instead, as part of its regular course of business, Capital One Bank maintains exemplar solicitation forms and assigns a unique four digit solicitation number to each form of solicitation that it sends out." Id., ¶ 4. Charles Clark ("Clark"), Executive Response Specialist II for Capital One Services, Inc. stated that Plaintiff's signed pre-approved acceptance certificate for his account ending in 1759 was part of credit card solicitation number 5759. See id., ¶¶ 9-12. According to Clark and the business records of Capital One Bank, the 5759 exemplar solicitation form clearly includes a disclosure page stating: "If you accept this offer, we'll transfer your former charged-off account balance of $99999999 into your new Capital One Visa account, for which you will receive one simple monthly statement." Id., Exhibit 2.

On July 30, 2003, Plaintiff filed suit against defendant Capital One Bank A/K/A Capital One Services, Inc. A/K/A Capital One Financial Corporation A/K/A Capital One, F.S.B. See Record Document 1. Plaintiff amended his complaint on March 23, 2004, adding individual defendants, Capital One Financial Corporation, Capital One Bank, Capital One Services, Inc., and Capital One F.S.B. See Record Document 27, ¶ 3. Plaintiff alleges violations of the Truth-in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), Virginia law and Louisiana law. See id., ¶ 4.[3] Defendants filed their Motion to Dismiss, or, in the alternative, a Motion for Summary Judgment, seeking to dismiss all of Plaintiff's claims, on April 16, 2004. See Record Document 32. Plaintiff opposed such motion on May 25, 2004. See Record Document 43.

---

[3]Plaintiff also moved for class certification in his complaint. See Record Document 27, ¶ 74. At the time of this Memorandum Ruling, the issue of class certification has not been addressed by this Court.

## II. LAW AND ANALYSIS.

The motion before this Court is a motion to dismiss or, in the alternative, a motion for summary judgment. The Court has elected to rule on the motion to dismiss or, in the alternative, a motion for summary judgment filed by Defendants as a motion for summary judgment under Federal Rule of Civil Procedure 56.

As evidenced by the factual background portion of this Memorandum Ruling, a factual issue in this case is whether the credit card solicitation Plaintiff received from Defendants contained the following statement: "If you accept this offer, we'll transfer your former charged-off account balance of $1,278.00 into your new Capital One Visa account, for which you will receive one simple monthly statement." However, the Court finds that the aforementioned factual issue does not preclude this Court from proceeding, and ruling, on the defense motion under Rule 56. The factual issue of whether Plaintiff received the previously mentioned "disclosure" with the credit card solicitation is not material. As set forth more fully below, the FDCPA and TILA claims are dismissed as time barred; the Virginia state law claims are dismissed because Plaintiff abandoned such claims and Virginia law precludes such claims; and the remaining Louisiana state law claims are dismissed because the Court declines to exercise supplemental jurisdiction over the remaining Louisiana state law claims where all claims over which the Court had original jurisdiction have been dismissed.

### A. Rule 56 Summary Judgment.

Summary judgment under Rule 56 should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, (1986). See also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075). See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th

Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

With these principles in mind, we now turn to a review of the claims at issue.

**B.      Properly Named Defendants.**

Defendants contend that because the caption of the "First Amended and Supplemental Complaint and Demand for Jury Trial" (Record Document 27) only names Capital One Bank as a defendant, Plaintiff claims against any other admittedly distinct entity – Capital One Services, Inc. and Capital One, F.S.B. – should be dismissed as a matter of law. In making such argument, Defendants rely on Beck v. Roper Whitney, Inc., 190 F.Supp.2d 524 (W.D.N.Y. 2001), a case with little or no precedential value to this Court. Further, Defendants disregard cases standing for the principle that a defective caption is not a fatal defect. In Tyrolf v. Veterans Administration, 82 F.R.D. 372 (E.D. La. 1979), the court stated:

>  Notwithstanding the requirement that a pleading be appropriately captioned,

> a defective caption does not deprive the court of its power to look beyond the caption in order to determine jurisdiction. Professors Wright and Moore's discussion of the rule is particularly applicable: Although helpful to the Court, the caption usually is not considered a part of the pleader's statement of claim or response and is not determinative as to the partes to the action or the Court's jurisdiction. . . . This seems appropriate inasmuch as a defective caption or even its complete absence is merely a formal error and should never be viewed as a fatal defect. . . . The mere failure to comply with such a technical rule of pleading is not, in this Court's opinion, fatal.

Tyrolf, 82 F.R.D. at 374-375 (citations omitted). Relying on Tyrolf, another Louisiana federal district court stated that "this jurisdiction has long recognized that a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." Jones v. M/V Boomtown Belle Casino, No. Civ. A 98-0084, 1998 WL 158746, at *1 (E.D.La. March 27, 1998); see also Hollander v. Davis, 120 F.2d 131, 133 (5th Cir. 1941) (stating that "sharp and technical condemnation of pleading[s]" no longer exist) and Hines v. Wainwright, 539 F.2d 433, 434 (5th Cir. 1976) (stating that the federal policy is to decide "cases on the basis of substantive rights rather than technicalities was determinative"). Based on the foregoing, the Court **DENIES** Defendants' Rule 56 motion on the grounds that Plaintiff's failure to include Capital One Services, Inc. and Capital One, F.S.B. in the caption of his first and amended and supplemental complaint is fatal to his claims against those defendants.

    **C.**    **Fair Debt Collection Practices Act Claim.**

Defendants move to dismiss Plaintiff's FDCPA claim on multiple grounds. First, Defendants contend they were not debt collectors, but rather creditors, under the FDCPA. Second, Defendants argue that Plaintiff's FDCPA claim is time barred. This Court will assume, for the limited purpose of this Memorandum Ruling, that Defendants were debt

collectors[4] and proceed to Defendants' argument that summary judgment is proper as to Plaintiff's FDCPA claim, as such claim is time barred.

Section 1692k(d) of the FDCPA states that "an action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." Thus, the FDCPA has a one-year statute of limitations. Based on Byes v. Accelerated Cash Flow, Inc., Civ.A. Nos. 95-200, 95-201, 95-203 and 95-920, 1996 WL 337222, at *2 (E.D.La. June 18, 1996), Defendants argue that "there is no applicable federal provision for tolling" the FDCPA's statute of limitations period. Conversely, Plaintiff argues that because the one-year statute of limitation is not a jurisdictional restriction, it is subject to tolling exceptions. See Salgado v. Harvard Collection Services, Inc., No. 01 C 2572, 2001 WL 803683, at *2, n. 2 (N.D.Ill. July 17, 2001) (citation omitted) (noting that the Seventh Circuit has stated that the FDCPA's limitations period is not jurisdictional, and thus could be subject to a tolling argument if necessary); Garrett v. Empire Cooler Service, Inc., No. 03 C 9137, 2004 WL 2011399, at *1 (N.D. Ill. June 21, 2004) (stating that "limitations periods are generally subject to equitable tolling. . . . The FDCPA's limitation period is not jurisdictional and, thus, is subject to equitable tolling."). For purposes of this Memorandum Ruing, this Court will assume, without deciding, that the doctrine of equitable tolling applies to the FDCPA.

In this case, there is no dispute that Plaintiff received a credit card solicitation on

---

[4]The FDCPA, 15 U.S.C. §§ 1692-1692o, applies to "debt collectors." Section 1692a(6) defines "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

December 17, 2001.  See Record Document 1, ¶ 16.  The instant action was filed on July 30, 2003.  See id.  Plaintiff, beginning in January 2002, attempted to communicate with Capital One on multiple occasions regarding the erroneous billing statement he received, but he "could not obtain a meaningful response or proper assistance."  Id., ¶¶ 27, 34.  After getting no response from Defendants, Plaintiff hired Pitre, who wrote multiple dispute letters on behalf of Plaintiff to Capital One.  The letters disputed the validity of the debt contained in the billing statement and were written on June 10, 2002, August 8, 2002, September 24, 2002, and December 12, 2002.  See Record Document 19, Affidavit of Kenneth Pitre, Exhibits A, C, and E.  Mays, on behalf of Capital One Services, Inc., responded to such letters on August 6, 2002, November 29, 2002, and June 10, 2003.  See id., Exhibits B, D, and F.  Mays always maintained that Plaintiff had reaffirmed the prescribed debt and authorized the balance transfer; that Capital One did not engage in deceptive practices; and that Plaintiff's account was opened because Capital One believed that the application contained truthful and accurate information.  See id.

Plaintiff claims that the statute of limitations did not begin to run until Mays responded to Pitre on August 6, 2002.[5]  Conversely, Defendants maintain that Plaintiff

---

[5] As in numerous other areas of Plaintiff's complaint, this Court is not altogether sure of the specific FDCPA violation(s) that Plaintiff is asserting.  For instance, from a review of the summary judgment record and as more fully explained in section II(E) of this Memorandum Ruling, the Court believes that Plaintiff's claims of inaccurate and false reporting to consumer credit agencies is asserted under state law, not federal law such as the FDCPA or the FCRA.  As to any other possible claim under the FDCPA, there is simply no competent summary judgment evidence that Defendants engaged in false, deceptive, misleading, unfair, or unconscionable conduct in attempting to secure payment from Plaintiff; thus, this is not the appropriate case to apply the continuing violation doctrine. See Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F.Supp2d 1156 (N.D.Ca. 2003) (citations omitted).

should have filed suit no later than June 10, 2003, one year after Pitre contacted Capital One on behalf of Plaintiff. The Court agrees with Defendants' contention. Plaintiff knew as early as January 2002 and no later than June 2002 of the allegedly inaccurate billing statement. Yet, he wanted until July 2003 to file suit. Just as in this Court's analysis of Plaintiff's TILA claim, the statute of limitations on Plaintiff's FDCPA claim began to run no later than June 2002, months after he had learned of Defendants' alleged wrongful acts and had hired Pitre to remedy those acts.

Further, even if this Court applies the doctrine of equitable tolling to the FDCPA, Plaintiff's claim still falls as time barred. Equitable relief should only be used sparingly. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457 (1990). Plaintiff bears the burden of showing that he was somehow misled or hoodwinked by the Defendants. See id. Here, there is simply no evidence that Plaintiff's failure to file until July 2002 was anything more than a failure to exercise the appropriate standard of due diligence. Summary judgment is **GRANTED** as to Plaintiff's FDCPA claim, as such claim is time barred and there is no justification for invocation of equitable tolling in this case.

### D. Truth In Lending Act Claim.

Plaintiff's TILA claim is less than clear in his first amended and supplemental complaint. However, it appears that he alleges a violation of TILA based on the allegedly deceptive credit card solicitation he received in December 2001.

The TILA states that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation. See 15 U.S.C. § 1640(e). Thus, the TILA, like the FDCPA, also employs a one-year statute of limitation. "The limitations period

in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA claim." Jackson v. Adcock, No. Civ. A 03-3369, 2004 WL 1900484, at *4 (E.D.La. Aug. 23, 2004). Equitable tolling is "appropriate where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Jackson, 2004 WL 1900484, at *4, n. 21 (citing Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002)).

In this case, the alleged violation of TILA – the deceptive credit card solicitation - occurred on or about December 17, 2001. See Record Document 27, ¶ 16. Thus, Plaintiff's TILA claim appears to be prescribed on its face. However, Plaintiff maintains that equitable tolling applies and that his TILA claim is not time barred.

The Court finds Plaintiff's argument unpersuasive. In Dawkins v. Sears Roebuck & Co., 109 F.3d 241 (5th Cir. 1997), the Fifth Circuit stated:

> The statute of limitations on Dawkins's Truth-In-Lending Act claims began to run sometime in late 1991 when Dawkins first learned of Sears's actions and when he initially hired an attorney. Because Dawkins did not file his complaint until May 19, 1995, the statute of limitations has long since run.

Dawkins, 109 F.3d at 243. In the instant matter, there is no dispute that Plaintiff received the credit card solicitation in December 2001. See Record Document 27, ¶ 16. By January 2002, Plaintiff had received the alleged erroneous billing statement from Defendants. See id., ¶¶ 26-28. Plaintiff hired Pitre in June 2002 and Pitre made his first inquiry to Defendants on June 10, 2002. See id., ¶¶ 36-38. At the latest, Plaintiff should

have filed the instant suit by June 10, 2003. The suit was not filed until July 30, 2003.

Plaintiff attempts to distinguish Dawkins on several grounds, but this Court is not convinced. Plaintiff stated: "Dawkins knew of his rights and of the existence of the conditions precedent to file suit against Sears and did nothing for 4 years." Record Document 19 at 15. Further, Plaintiff maintains that Dawkins is distinguishable because "CapOne ignored [P]laintiff's disputes." Id. Such distinctions are not plausible in this case. Plaintiff knew of his right and of the existence of the conditions precedent to file suit against Defendants as early as January 2002, when he began his attempts to dispute the billing statement, but no later than June 10, 2002 when Pitre wrote to Capital One on his behalf. Further, Plaintiff has failed to come forward with competent summary judgment evidence that "CapOne ignored [his] disputes."

Further, Plaintiff seems to argue that equitable tolling should apply in this case because "CapOne tried to hide and ignore [P]laintiff in the hopes that he would just give up and pay the fraudulent collection balance." Record Document 19 at 16. The Court finds that this is not a case where equitable tolling applies. Equitable tolling is appropriate where the plaintiff has been "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Jackson, 2004 WL 1900484, at *4, n. 21. Here, the Court has reviewed letters written by Mays on behalf of Capital One that evidence Defendants' belief: "[W]e opened this account because we understood the application to be authentic and that it contains truthful and accurate information." Record Document 19, Exhibit F. Further, Mays repeatedly asked Pitre to contact her directly with any questions and in no way obstructed Plaintiff's "legal rights." Id., Exhibits A-F. This is simply not a case where Plaintiff was bamboozled by Defendants

and equitable tolling is not necessary. Plaintiff was never misled about the application of the statute of limitations and normal operation of the statutory bar is fatal to Plaintiff's TILA claims.

Accordingly, based on the foregoing analysis, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's TILA claims, as such claims are time barred.

> **E.     Claims that Defendants Furnished Inaccurate Information to Consumer Reporting Agencies.**

Plaintiff alleges that Defendants reported inaccurate and false credit information about Plaintiff to national consumer credit reporting agencies. See Record Document 27, ¶ 68. Plaintiff argues that Defendants reported the false information willfully and with malice. See id., ¶ 71. Despite these allegations, Plaintiff has failed to clearly state under what federal or state law he is asserting such claims. Defendants, at first glance, believed Plaintiff was asserting such claim under the Fair Credit Reporting Act ("FCRA"). However, Plaintiff admits in his opposition brief that he has not tried to assert a claim under the FCRA. See Record Document 43 at 8-9. Rather, Plaintiff states that "Paragraphs 68 and 71 of the first amended and supplemental complaint . . . state non-FRCA claims for: [1] reporting inaccurate information about plaintiff and others similarly situated . . . ; and [2] using credit reportings to effect the broader scheme, bypassing data retention requirements . . . and reporting false information . . . ." Id. at 9. Yet, after making this contention, Plaintiff fails to identify under what federal or state law he is asserting such claims. Thus, unfortunately, this Court is left to review Plaintiff's pleadings to make such a determination, since Defendants have moved for summary judgment on the false and inaccurate reporting claims.

The Court notes that in his opposition brief (Record Document 43), Plaintiff repeatedly adopts by reference arguments he previously made in Record Document 19, his response and opposition to a previously filed motion to dismiss or, in the alternative, motion for summary judgment. Despite the fact that the previously filed motion to dismiss or, in the alternative, motion for summary judgment was mooted by this Court on April 8, 2005 (Record Document 60), the Court nonetheless reviewed the arguments made by Plaintiff in his previously filed opposition brief. For instance, in opposing the instant motion, Plaintiff refers to arguments, in the context of the FCRA and his claims for inaccurate and false reporting, he made on pages 36-40 of his previously filed brief. See Record Document 43 at 9. In that previously filed brief, Plaintiff stated:

> Plaintiff would first note that state law claims are not preempted. Courts have refused to dismiss state law and common law claims in the nature of negligent credit reporting, defamation, negligent enablement of the imposter, invasion of privacy, etc. The Fair Credit Reporting Act does not preempt state or common law claims as long as the state or common law is not inconsistent with the Fair Credit Reporting Act. The Fair Credit Reporting Act does not preempt a state law cause of action for defendant's negligence in communicating erroneous credit data about a consumer.

Record Document 19 at 33-34. Thus, it appears that Plaintiff's claims for Defendants' inaccurate and false reporting are asserted under either Virginia state law or Louisiana state law. Plaintiff's state law claims will addressed below.

### F. Virginia State Law Claims.

In their motion, Defendants stated that "the amended complaint also appears to attempt to allege violations of state law." Record Document 32 at 15. Defendants contend that Virginia law applies pursuant to the Customer Agreement pertinent to Plaintiff's second credit card account and that Virginia law precludes any Virginia state law claim. See id.,

Exhibit A. Virginia law provides:

> Every person subject to the provisions of 15 U.S.C. § 1601 et seq. and Regulation Z, Truth-in-Lending, promulgated by the Board of Governors of the Federal Reserve System shall comply with such statutes and regulations when offering or extending consumer credit as defined therein. ***A lender who fails to comply with this section shall not be subject to any liability or penalty beyond those imposed by such federal statutes and regulations.***

Va. Code Ann. § 6.1-330.79 (emphasis added). The Virginia Attorney General concluded:

> Section 6.1-330.79 is clear and unambiguous. It is my opinion that § 6.1-330.79 clearly intends to preclude other state law claims where the conduct forming the basis of a claim is regulated by federal law. Such regulated conduct would include conduct that is required, specifically permitted, or prohibited by federal law. You also ask whether a plaintiff who brings a claim under Virginia law regarding conduct regulated by § 6.1-330.79 is limited substantively and procedurally to the remedies and recovery allowed by the Federal Truth-in-Lending Act and Regulation Z. Because I conclude that § 6.1-330.79 clearly and unambiguously precludes other state law claims where the conduct forming the basis of a claim is regulated by federal law, I must also conclude that a claim under Chapter 7.3 of Title 6.1 is limited substantively and procedurally to the remedies and recovery allowed by federal law.

2001 WL 1265219, at *2 (Va. A.G. Sept. 12, 2001). Further, citing the aforementioned attorney general opinion and section 6.1-330.79, a California state court has held that "Virginia law expressly limits a borrower to remedies under federal law where the claim is based on conduct regulated under TILA and Regulation Z." Johnson v. Capital One Bank, 120 Cal.App.4th 942, 946, 15 Cal.Rptr.3d 917, 919 (Cal.App. 2 Dist. 2004).

After reviewing the First Amended and Supplemental Complaint, the Court agrees that Plaintiff appears to assert Virginia state law claims. See Record Document 27, ¶¶ 4, 69, 72. Yet, in his opposition brief, Plaintiff states that he "has never consented to Virginia law." Record Document 43 at 6. In view of this straightforward assertion of fact, Plaintiff appears to have abandoned any Virginia state law claim. Even if Plaintiff would have

argued the merits of a Virginia state law claim in his opposition brief, Va. Code Ann. § 6.1-330.79 clearly precludes such claim based on the reasoning of the aforementioned attorney general opinion and the Johnson case. Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's Virginia state law claims. As a matter of law, any Virginia state law claims have either been abandoned and/or are precluded by section 6.1-330.79. The Court will address any remaining Louisiana state law claims below.

### G. Remaining Louisiana State Law Claims.

Again, Plaintiff's complaint is somewhat vague in identifying precisely what Louisiana state law claims are being asserted. In his First Amended and Supplemental Complaint, he simply alleges that Defendants are liable pursuant to the laws of the state of Louisiana; that Defendants violated "state . . . laws and torts;" and that Defendants violated state debt collection laws and unfair and deceptive trade practices laws. Record Document 27, ¶¶ 4, 69, 72. Thus, the only identifiable Louisiana state law claims are for violation of the Louisiana Unfair Trade Practices Act ("LUTPA") and general tort claims under Louisiana Civil Code Article 2315.

A district court may, and the general rule is that it should, decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3); Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir.); cert. denied, 516 U.S. 818, 116 S.Ct. 75 (1995) (district court did not abuse discretion by remanding remaining state law claims). Here, Plaintiff has alleged that this Court has both federal question and diversity subject matter jurisdiction. See Record Document 27, ¶ 4. This Court does not question its federal

question subject matter jurisdiction over this case under 28 U.S.C. § 1331. However, the Court does challenge diversity subject matter jurisdiction under 28 U.S.C. § 1332.

This Court must consider and examine the basis of subject matter jurisdiction <u>sua sponte</u> if it appears at all questionable and the issue is not raised by the parties. <u>See J.A.R., Inc. v. M/V Lady Lucille</u>, 963 F.2d 96, 98 -99 (5 Cir. 1992) (citing <u>Giannakos v. M/V Bravo Trader</u>, 762 F.2d 1295, 1297 (5th Cir.1985)). The Court does not question the complete diversity of the parties, but instead challenges Plaintiff's statement that the matter in controversy exceeds $75,000.00, exclusive of interest and costs. <u>See</u> Record Document 27, ¶ 4. Because the alleged erroneous billing in this case amounts to only $1,278.00, this Court cannot find that the requisite amount in controversy has been met. Hence, we are left with a case where all claims over which this Court had original jurisdiction via federal question subject matter jurisdiction have been dismissed. Accordingly, the Court finds that the appropriate disposition of any of Plaintiff's remaining Louisiana state law claims is to dismiss them without prejudice. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Engstrom</u>, 47 F.3d at 1465.

### III. CONCLUSION.

Based on the foregoing analysis, the Court finds that Defendants have demonstrated the absence of genuine issues of material fact and that Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to his FDCPA, TILA, and Virginia state law claims. Accordingly, summary judgment in favor of Defendants is **GRANTED** as to Plaintiff's FDCPA, TILA, and Virginia state law claims. Plaintiff's remaining Louisiana state law claims are **DISMISSED WITHOUT PREJUDICE**, as this Court declines to exercise supplemental jurisdiction over such state law claims

where all claims over which this Court had original jurisdiction have been dismissed.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 30th day of March, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE